

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 23, 2015

**BY HAND AND ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    *In Re April 13, 2015 Grand Jury Subpoena*, 15 Misc. 102

The Government writes in response to the April 17, 2015 letter of Daniel Arshack, Esq., who represents an estate and its executrix Margaret Tanchuck (the "Petitioners"). In it, Petitioners request the Court's "supervision" over the Government's April 13, 2015 subpoena to the Doyle New York (the "Subpoena"). On April 17, 2015, the Honorable Robert W. Sweet, as Part I Judge, construed the letter as a motion to quash or modify the Subpoena, and set a briefing schedule and an April 28, 2015 oral argument date before Your Honor.

The Government opposes Petitioners's motion to quash or modify the Subpoena. Rule 17 of the Federal Rules of Criminal Procedure states that the court may quash or modify a subpoena "if compliance would be unreasonable or oppressive." Petitioners have made no such showing, nor can they. Further, to the extent that Petitioners's motion may be construed as a motion for the return of property under Rule 41(g) of the Federal Rules of Criminal Procedure, Petitioners have not met their burden of demonstrating either that the property at issue properly belongs to them, or that the Government's need for the property as evidence has ended.

### I.    *Procedural History*

A federal grand jury in this District is investigating the theft of eight priceless books from the New York Public Library (the "Library"): (i) a workbook for Benjamin Franklin's printing house from 1759 to 1776, and (ii) seven bibles, which were created between 1672 and 1861 (the "Contested Items" or the "Items"). In 2014, Petitioners, a private estate in Long Island, brought the Contested Items to The Doyle, an auction house, in May 2014. Due to several readily observable indicators, including New York Public Library call numbers on the spines of the books and a New York Public Library ownership stamp on one of the books, The Doyle reached out to the Library. The Library confirmed that the Items were theirs, and that the Library had never sold the Items or authorized their removal from the Library. Petitioners nonetheless refused to return the Contested Items to the Library, first offering to sell back the

stolen books, then filing a state court action seeking a declaratory judgment that Petitioners had gained ownership of the Contested Items through the equitable doctrine of laches.[1]

The Library informed the United States Attorney's Office of the theft of the Contested Items, and the Office opened a grand jury investigation into the potential violation of federal law that had occurred within its jurisdiction.[2]  Pursuant to this investigation, on April 7, 2015, the Government called Petitioners to request further information relevant to the investigation and to inform them that they were potential targets.  On or about April 7, 2015, Petitioners contacted The Doyle and demanded the return of the Contested Items within 48 hours.  On or about April 10, 2015, the Government again reached out to Petitioners, to inform them that it had requested that The Doyle maintain possession of the Contested Items for the time being.  On April 13, 2015, Petitioners filed an Order to Show Cause in state court, seeking an order directing The Doyle to return the Contested Items to Petitioners.  On April 13, 2015, the Government issued the Subpoena, which ordered The Doyle to produce the Contested Items by April 27, 2015.  On April 14, 2015, the Government took the items into its possession, where they remain.[3]

---

[1] Petitioners's laches argument does not appear to be consistent with governing New York case law.  *See Solomon R. Guggenheim Foundation* v. *Lubell*, 77 N.Y.2d 311, 320 (1991) ("To place the burden of locating stolen artwork on the true owner and to foreclose the rights of that owner to recover its property if the burden is not met would . . . encourage illicit trafficking in stolen art."); *see also In re Flamenbaum*, 22 N.Y.3d 962 (N.Y. 2013) (holding that doctrine of laches did not grant possession of ancient golden tablet to estate, where estate had not established that, had the museum taken steps to locate the tablet, the museum would have discovered its location).

[2] Title 18, United States Code, Section 668 criminalizes the theft of an object of cultural heritage from a museum, as well as any action to receive, conceal, exhibit, or dispose of such an item, knowing that it has been stolen or obtained by fraud.

[3] Petitioners misstate the date and nature of many of the relevant actions taken.  For example, Petitioners incorrectly claim that the Subpoena was issued and the Contested Items were taken into the Government's possession on April 10.  (Pet.'s Letter at 3.)  Petitioners also claim that the Government called them after the seizure of the Items to inform them that the Items had been seized and to suggest that the Order to Show Cause was unnecessary.  (*Id.*)  In fact, the Government did not call the Petitioners after the items were seized, to discuss the Order to Show Cause or otherwise.

Further, Petitioners incorrectly represent that the Government "suggested" or "explicitly invited" them to make the instant motion.  (*Id.* at 1, 3, 5.)  No such thing occurred.  On April 15, 2015, Petitioners told the Government that Petitioners would move to invalidate the Subpoena in federal court if the Government did not agree to immediately give the Contested Items to Petitioners in the event that they won the lawsuit.  The Government declined to enter into Petitioners's proposed agreement at that time, but in no way "explicitly invited" a motion litigating the validity of the already-executed subpoena.

## II.     Motion to Quash or Modify the Subpoena

A grand jury is presumed to act within the legitimate scope of its authority "absent a strong showing to the contrary." *United States* v. *R. Enters., Inc.*, 498 U.S. 292, 300 (1991). Accordingly, "a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *Id.* at 301; *see also United States* v. *Salameh*, 152 F.3d 88. 109 (2d Cir. 1998).

Petitioners have not shown why the Subpoena was unreasonable, or advanced any arguments of its invalidity, other than to quarrel with the stock language on the administrative piece of paper attached to the Subpoena titled "Declaration of Custodian of Records," which of course is not itself part of the Subpoena. [4]   (Pet.'s Letter at 4 n.1; *id.*, Ex. A at 4.)   Further, Petitioners cite no case law for the proposition that they may challenge a subpoena that has already been executed upon a third party.

Instead, Petitioners criticize the grand jury's investigation generally, based on Petitioners's limited knowledge of the scope and nature of the investigation.  As set forth above, the Government has a good-faith basis for investigating the theft of important and valuable documents stolen from the Library, and Petitioners's suggestions otherwise are unwarranted. (Pet.'s Letter at 1, 2, 3, 4, and 5.)  "Unlike [a] [c]ourt, whose jurisdiction is predicated upon a specific case or controversy, the grand jury can investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not." *United States* v. *Williams*, 504 U.S. 36, 48 (1992) (internal quotation marks omitted).  The Supreme Court has "insisted that the grand jury remain free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it." *Id.* at 48-49 (internal quotation marks omitted).   Accordingly, given "the grand jury's operational separateness from its constituting court," the Supreme Court has "been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure." *Id.* at 49-50.

## III.     Motion for Return of Property

Petitioners's motion is perhaps more properly characterized as a motion under Rule 41(g) for the return of what they allege is their property.  *See* Fed. R. Crim. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.").  Jurisdiction under Rule 41 "is to be exercised with great restraint and caution since it rests upon the court's supervisory power over the actions of federal law enforcement officials." *De Almeida* v. *United States*, 459 F.3d 377, 382 (2d Cir. 2006) (internal quotation marks omitted).

---

[4] To the extent that Petitioners challenge the subpoena on relevancy grounds, "the motion to quash must be denied unless the district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." *United States v. R. Enters., Inc.,* 498 U.S. 292, 300 (1991).

"To prevail on a Rule [41(g)] motion, a criminal defendant must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended."  *Ferreira* v. *United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005).[5]  Petitioners have not made the required showings.  First, they have not demonstrated that they are entitled to the lawful possession of the Contested Items, which are the property of the Library.  Second, they have not shown that the Contested Items were unlawfully seized, nor can they, as they were seized as grand jury evidence pursuant to a properly executed subpoena.

Last, Petitioners cannot show that the Government's need for the Contested Items as evidence has ended, because the grand jury investigation continues.  "A defendant's right to the return of lawfully seized property is subject to the Government's legitimate continuing interest in that property."  *Lavin* v. *United States*, 299 F.3d 123, 128 (2d Cir. 2002); *see also United States* v. *Chambers*, 192 F.3d 374, 377 (3d Cir. 1999) ("If a motion for return of property is made while a criminal prosecution is pending, the burden is on the movant to show that he or she is entitled to the property.").  "If the state 'has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable' and a motion to return the property pursuant to Rule 41(g) will be denied."  *Mirka United, Inc.* v. *Cuomo*, No. 06 Civ. 14292, 2007 WL 4225487, at *8 (S.D.N.Y. Nov. 27, 2007) (Lynch, J.) (quoting 1989 Advisory Committee Notes to Rule 41(e), predecessor to Rule 41(g)); *see also United States* v. *Rayburn House Office Building*, 497 F.3d 654, 663 (D.C. Cir. 2007) (same).  Here, the Government needs to examine and analyze the Contested Items to further its investigation, and will also need the Items as evidence in any resulting prosecution.

In conclusion, Petitioners have not shown why the Subpoena should be modified after its execution, and a Rule 41(g) motion is not properly brought at this point, where Petitioners have not established that they are entitled to lawful possession of the Contested Items and the Government's need for the Items as evidence continues.

Very truly yours,

PREET BHARARA
United States Attorney

by: _/s/_____
Margaret Graham
Assistant United States Attorney
(212) 637-2923

cc: Daniel Arshack, Esq., by ECF and email

---

[5] *See also United States* v. *Rudisill*, 358 F. App'x 421 (4th Cir. 2009) (same); *United States* v. *Pierre*, 484 F.3d 75, 87 (1st Cir. 2007) (same); *United States* v. *Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991) (same); *Sovereign News Co.* v. *United States*, 690 F.2d 569, 577 (6th Cir. 1982) (same); *United States* v. *Hubbard*, 650 F.2d 293, 303 (D.C. Cir. 1980) (same); Fed. R. Crim. P. advisory committee note; 3 C. Wright, Federal Practice and Procedure § 673, at 761–65 (2d ed. 1982)).